UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                      Case Number 19-20195
                                                   Honorable David M. Lawson

v.

RODNEY CARTER,

        Defendant.
_____/

### ORDER DENYING MOTION TO REDUCE SENTENCE

Defendant Rodney Carter has filed a motion asking the Court to reduce his prison sentence to time served under the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. The Court sentenced Carter in August 2021 to 120 months in prison for drug trafficking crimes. Carter argues that he is eligible for a sentence reduction because of his need to care for his wife who apparently suffers from the lingering effects of a stroke. The government's argument in opposition to the motion contests the degree of his wife's debilitation and whether the couple actually is in a marital relationship. Carter's arguments do not establish that "extraordinary and compelling reasons warrant such a reduction," as section 3582(c)(1)(A)(i) requires, and therefore his motion to reduce his sentence will be denied.

I.

The defendant was indicted in 2019 after a federal investigation, spanning multiple states, identified him as a distributor of cocaine and other controlled substances as part of a drug trafficking organization. He ultimately was charged in a superseding indictment, filed on September 4, 2019, with conspiracy to possess with intent to distribute and to distribute cocaine

and heroin in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(ii)(II) (Count 1), possession with intent to distribute and distribution of cocaine (Count 2), possession with intent to deliver a controlled substance in violation of 21 U.S.C. § 841(a)(1) (Count 4), unlawful use of a communication facility to commit a controlled substance offense in violation of 21 U.S.C. § 843(b) (Count 7), and possession of a firearm as a felon in violation of 18 U.S.C. § 922(g)(1) (Count 8). The charges were based on evidence that in 2018 and 2019, Carter worked with several individuals to obtain cocaine and heroin for distribution in the Detroit area. During a May 2018 traffic stop, Detroit Police located cocaine, heroin, oxycodone, marijuana, and cash in his possession. He was ultimately convicted of two felony drug distribution charges in Michigan state court and sentenced to a term of probation. Unfortunately, he did not profit from any insight imparted by this incident. In March of 2019, DEA agents searched his residences and located cocaine, heroin, marijuana, oxycodone pills, nearly $60,000 in cash, and several firearms.

On December 19, 2019, the defendant pleaded guilty under a plea agreement to Counts 1, 2, 4, and 8 of the indictment. After delays due to the COVID-19 pandemic, on August 13, 2021, the Court sentenced him to 120 months in prison, the mandatory minimum.

The defendant's wife, Chenitta White, also was indicted for her role in the scheme, which was less significant than his own. According to White's Presentence Investigation Report (PSR), she and the defendant married sometime in 2019 but separated after his arrest later that year and maintained separate residences while on bond. White ultimately pleaded guilty to unlawful disposition of a firearm to a felon in violation of 18 U.S.C. § 924(d) on July 8, 2021. In 2019, after her indictment, she experienced a stroke, which left her partially paralyzed on one side of her body. The PSR did not disclose any information about her need for care at the time. On October

27, 2021, she was sentenced to a two-year term of probation, which she completed successfully in April of 2023.

On January 22, 2024, Carter filed a motion to reduce his sentence without the assistance of counsel, which invoked Amendment 814 to the Sentencing Guidelines and his wife's medical circumstances. ECF No. 226. The Court appointed an attorney to represent him but denied the Amendment 814 request on June 11, 2024. ECF No. 234. On June 17, 2024, counsel filed a new motion to reduce the sentence focused solely on Carter's wife's medical conditions. ECF No. 235. According to the motion, Carter requested compassionate release from the warden of his prison, but the request was denied shortly thereafter. The government opposes the defendant's request for release.

Carter presently is confined at FCI Terra Haute in Indiana. According to the BOP's website, he is scheduled to be released from custody on February 21, 2029. He is 64 years old. His prison records disclose two disciplinary infractions: a March 2024 report for insolence where he stated to prison staff, "F**k that bitch I don't care," and a January 2024 incident where he was found with a cell phone. ECF No. 238-2, PageID.1472.

II.

By now it is well understood that, generally, "a federal court 'may not modify a term of imprisonment once it has been imposed,'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)), and that this "rule comes with a few exceptions, one of which permits compassionate release," *ibid.* The request for such relief must be presented by a motion filed in federal court, either by the Director of the Bureau of Prisons, 18 U.S.C. § 3582(c)(1)(A), "[o]r it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the

[prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier,'" *Alam*, 960 F.3d at 832 (quoting 18 U.S.C. § 3582(c)(1)(A)).

Compassionate release is a concept that has come to be recognized as authorized by Congress in section 3582(c)(1)(A). It is an exception to the "rule of finality," which prohibits district courts from modifying a sentence "except in limited circumstances." *United States v. Hunter*, 12 F.4th 555, 561, 569 (6th Cir. 2021). There are three requirements that must be satisfied before relief can be granted under this section, the first of which is that "extraordinary and compelling reasons warrant [a sentence] reduction." *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). For the second requirement, the Court must "ensure 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Nicholson*, No. 21-1724, 2023 WL 4447881, at *2 (6th Cir. July 11, 2023) (quoting 18 U.S.C. § 3582(c)(1)(A)). Finally, the Court must "'consider[] the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable.'" *Ibid.*

"[I]f each requirement is met, a court may — but need not — reduce a term of imprisonment." *Ibid.* (citing 18 U.S.C. § 3582(c)(1)(A)). On the other hand, "[i]f any of the requirements are not met, a court cannot reduce a sentence." *Ibid.*

A.

The court of appeals has observed that the determination of what constitutes "extraordinary and compelling circumstances," which previously was regarded as a "highly discretionary decision of the district court, as broadly suggested by the Supreme Court in *Concepcion v. United States*, 597 U.S. 481 (2022), has been severely and categorically cabined." *United States v. West*, 70 F.4th 341, 347 n.1 (6th Cir. 2023) (citing *United States v. McCall*, 56 F.4th 1048, 1074-76 (6th Cir.

2022) (Gibbons, J., dissenting)). That has led the court to observe that it "has predominantly defined what can constitute 'extraordinary and compelling' reasons for release by defining what circumstances *cannot* be 'extraordinary and compelling.'" *West*, 70 F.4th at 346 (citing *Hunter*, 12 F.4th at 570 (6th Cir. 2021). In accord with that trend, the Sixth Circuit broadly has recognized that typical circumstances attending incarceration and personal factors routinely considered at sentencing cannot supply "extraordinary and compelling" grounds for compassionate release. The factors that may not be considered include (1) the defendant's culpability and role in a criminal scheme, (2) sentencing disparities between the movant and his co-defendants, (3) the proportion of a custodial term already served, (4) the defendant's successful efforts at rehabilitation while confined, and (5) nonretroactive Sentencing Guideline amendments. *Hunter*, 12 F.4th at 570-72; *United States v. Scott*, No. 22-3737, 2023 WL 5671313, at *1 (6th Cir. May 4, 2023) ("[A]lthough Scott has served more than 70% of his sentence, as the district court aptly noted, 'an inmate serving the majority of his sentence is commonplace and ordinary, not extraordinary.'"); *McCall*, 56 F.4th at 1065-66.

The only reason Carter alleges as an extraordinary and compelling circumstance justifying release is his desire to care for his wife, who suffered from a stroke in 2019. He contends that his wife's mental state and quality of life have deteriorated substantially because she has lacked a caregiver since his son, Anthony Carter, died in a car accident in 2021. The defendant says the only other relative who could provide assistance is his wife's son, Nicholas White, but he was convicted of second-degree murder and sentenced to a substantial prison term in 2022.

The government's vigorous opposition to Carter's motion questions whether Carter and White are legally married or even in a relationship due to conflicting statements in their PSRs. It also maintains that Carter has not established that White is so incapacitated as to require around-

the-clock care. According to the government, Ms. White has posted on social media about her medical improvement and her visits to bars, restaurants, and beauty salons. It says there is no evidence that she has ever had a full-time caregiver and that the defendant has not explained why other family members are not available.

The record demonstrates that Chenitta White suffered a stroke in 2019 that left one side of her body partially paralyzed. The defendant represents that while he was on bond in this case, he assisted Ms. White by taking her to medical appointments, shopping for her, and completing household chores. The government points out, however, that Carter maintained a separate bond residence from Ms. White, and his conditions of pretrial release generally restricted his ability to leave his home without advance permission, so it is not apparent how he was able to perform all these tasks. He also did not inform the Court at sentencing that he had been caring for his wife.

That issue notwithstanding, Carter represents that after he was incarcerated, his son, Anthony Carter, became his wife's caregiver until he was tragically killed in a car accident. Then Ms. White's son, Nicholas White, "the only other close relative who could render assistance to her," ECF No. 235, PageID.1395, was convicted of murder in 2022 and sentenced to a substantial prison term. Carter attached to his motion a letter from Ms. White, who represents that she struggles with daily tasks and worries that without the defendant's help, her "health and safety will continue to deteriorate, leaving me vulnerable to further complications and potentially life-threatening situations." ECF No. 235, PageID.1410. Carter also provided a short letter from Ms. White's doctor, which confirms Ms. White's stroke and states that she struggles with "residual left sided weakness in her leg and inability to use her left arm." *Id.* at PageID.1410.

Carter's argument requires the Court to consider the amended policy statements promulgated by the Sentencing Commission in November 2023 covering compassionate release

motions. The amendments significantly impact the determination of what constitutes extraordinary and compelling circumstances within the meaning of section 3582(c)(1)(A)(i). One of those amendments states that "[t]he incapacitation of the defendant's spouse or registered partner" may constitute extraordinary and compelling circumstances "when the defendant would be the only available caregiver . . . ." USSG § 1B1.13(b)(3)(B). Attempting to ascertain the showing required under this provision, other courts in this circuit have looked to BOP Program Statement § 5050.50, which defines incapacitation as "a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse . . . is completely disabled, meaning that the spouse. . . cannot carry on any self-care and is totally confined to a bed or chair." *United States v. Smith*, No. 21-47, 2024 WL 3656187, at *5 (W.D. Ky. Aug. 5, 2024); *see also United States v. Steele*, No. 20-13-4, 2024 WL 1928945, at *2-3 (S.D. Ohio May 1, 2024). That view is narrow and likely would fail to include family members in need of substantial care but who are not *totally* confined to a bed or chair. It also is not clear why deferring to the BOP Program Guidelines is the best way to construe the Sentencing Commission's intentions under this provision. The BOP's views are not necessarily those of the Sentencing Commission.

Nevertheless, the defendant has not demonstrated that Ms. White's condition justifies release. The government points to various circumstances that it says suggest that Carter and his wife were separated at the time of their sentencing. This fact is not necessarily legally relevant to the defendant's ability to invoke this ground, since the policy statement does not include a carve out for separated partners. However, it casts doubt on whether the defendant sincerely intends to care for Ms. White upon release. Nonetheless, it certainly is possible that the couple has reconciled during the defendant's time in prison. And because courts are not well-suited to evaluating romantic relationships, this reason alone should not pose a barrier.

The government argument questioning whether Ms. White actually is so incapacitated as to require care from the defendant is more to the point of the Policy Statement. The government calls out various social media posts made by Ms. White after her stroke, where she holds herself out as having recovered substantially, describes participating in social activities outside of the home, and consumes cigarettes and alcohol. *See* ECF No. 206, PageID.1183-86, ECF No. 238, PageID.1460. It is difficult to know how much weight to give these posts, many of which were made in 2020 and 2021, before either Carter or Ms. White were sentenced, but they certainly do not help his cause. It is possible that Ms. White's condition has deteriorated since then, but if that were true, the Court expects that Carter would have provided recent medical records corroborating a decline. The only recent medical information for Ms. White that Carter offers, the March 2024 letter from her doctor, indicates that she suffers from some degree of paralysis on her left side and is unable to make full use of her left arm. Accepting that this condition presents challenges for Ms. White's life, it is a far cry from the level of "incapacitation" contemplated by USSG § 1B1.13(b)(3)(B). It is possible that Ms. White would benefit from some additional assistance in completing certain tasks, but the record compiled by the defendant does not demonstrate that she requires anything like intensive, around-the-clock care.

Finally, the government asserts that Carter has not demonstrated conclusively that he is Ms. White's only available caregiver. His motion papers allege that his son, Antony Carter, served as a caretaker for Ms. White until he died in a car accident. Ms. White's familial relationships are not altogether clear. According to her PSR, she only has one biological child, Nicholas White. White PSR ¶ 50. He is serving a substantial sentence in the Michigan Department of Corrections due to a homicide conviction. He clearly is unavailable to serve as a caretaker. The government also points to a 2020 social media post where Ms. White is pictured with a woman she describes

as her daughter, suggesting that she also might be a suitable caretaker. ECF No. 238, PageID.1463. It is true that the defendant "need not be the only imaginable caregiver; it is sufficient that he is the only *available* caregiver." *United States v. Allison*, No. 21-20436, 2024 WL 3012780, at *3 (E.D. Mich. June 14, 2024). The defendant's burden is not so high as to require that he disprove every possible alternative caregiving arrangement. For present purposes, however, it is sufficient to say that substantial questions remain about other caretakers for Ms. White. In any event, as indicated above, Carter has not demonstrated that Ms. White actually is so incapacitated as to require his care. His desire to aid Ms. White, although commendable, does not support a finding of extraordinary and compelling circumstances for release.

B.

Because Carter cannot demonstrate that extraordinary and compelling reasons support his release, the Court need not evaluate the section 3553(a) factors. *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021).

III.

Carter has exhausted his administrative remedies. However, he has not demonstrated that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for a reduction of sentence (ECF No. 235) is **DENIED**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated:   January 2, 2025